## LANSTON et al. v. CHILDREN'S HOSPITAL et al.

### No. 8826.

United States Court of Appeals District of Columbia.

Argued Feb. 16, 1945.

Decided April 16, 1945.

Mr. Mark P. Friedlander, of Washington, D. C., for appellants.

Mr. G. Bowdoin Craighill, of Washington, D. C., with whom Messrs. Frederic D. McKenney and John S. Flannery, both of Washington, D. C., were on the brief, for appellee American Security & Trust Co., Trustee.

Mr. Charles D. Drayton, of Washington, D. C., was on the brief for appellee Children's Hospital.

Mr. William Sabine, of Washington, D. C., with whom Mr. William F. Fitzgerald, of Washington, D. C., was on the brief, for appellees Le Marechal de la Cour Grande Ducale, Luxembourg, and Ervin Schwartz, by designation of Alien Property Custodian.

Before GRONER, C. J., and EDGERTON and ARNOLD, JJ.

EDGERTON, Associate Justice.

This suit asks for the construction of wills, a declaratory judgment, and an accounting. The court dismissed the complaint, after a hearing, and the plaintiffs appeal.

The wills to be construed are those of Beattie Lanston, who died in 1908, and her husband Tolbert Lanston who died in 1913. Their son Aubrey Lanston died in 1942.

The plaintiff Ethel V. Lanston is Aubrey's widow, and the plaintiffs Aubrey G. Lanston and Marjorie Lanston Fitzgerald are the children of Aubrey and Ethel V. Lanston. The defendant Trust Company is trustee under the wills of Beattie Lanston and of Tolbert Lanston.

The will of Beattie Lanston (a) gave the trustee 400 shares of stock in the Lanston Monotype Machine Company, in trust to pay the income to Aubrey Lanston during his life; (b) gave Aubrey power to appoint by will the persons to receive this stock on his death; and (c) provided that if Aubrey died intestate the stock should go to his heirs at law. During a divorce suit between Aubrey and his wife, and in order "to reach an adjustment of all questions of alimony, counsel fees, costs and other financial affairs," he executed and delivered to her a stipulation that "a decree may be passed vesting at Aubrey Lanston's death full title" to the stock in her. This stipulation was never filed, the decree was not passed, and the divorce suit was dismissed. Wills which purport to have been made by Aubrey in 1926 and 1940, respectively, appoint defendants Le Marechal and Schwartz to receive the stock. These wills of Aubrey have been filed in the office of the Register of Wills, but they cannot now be proved because they appear to have been executed in Europe. Two earlier wills of Aubrey, in which he left all his property to his wife, the plaintiff Ethel V. Lanston, have also been filed with the Register but not proved.

Plaintiffs contend that Aubrey "released or relinquished" his power of appointment and that they are entitled to the stock to which it relates. This contention is erroneous. The stipulation which Aubrey executed was expressly conditioned on the entry of a decree vesting title to the stock in Ethel V. Lanston, and was impliedly conditioned on the entry of a decree of divorce. Since neither decree was entered the stipulation failed, by its own terms, to become effective. The stipulation stated that it was "according to agreement entered into between the plaintiff and defendant several years ago"; and in the present suit plaintiff Ethel V. Lanston testified that "the agreement always was" that she would "have the Beattie Lanston estate * * *." But as far as appears the "agreement" referred to may have been a mere voluntary understanding and not a contract. Moreover no issue concerning any contract or

agreement, other than the stipulation itself, was before the court, for the complaint and the pre-trial proceedings referred to the stipulation and did not refer to any other contract or agreement. Since no contract by Aubrey not to exercise his power of appointment, or to exercise it in favor of the plaintiffs, was before the court, no question arises with regard to the legal effect which ought to be given to such a contract if it had been made. To the time of his death, according to the record Aubrey Lanston had not only the power but the right to appoint by will. Whether and in whose favor he did so are questions which cannot be determined until his will is proved.

The will of Tolbert Lanston left the bulk of his estate in trust to pay the income to his son Aubrey during his life, and provided that if Aubrey died leaving a widow the trustee should "set aside from my estate a sum sufficient, when invested, to pay to said widow the sum of One Thousand Dollars per annum, in equal quarterly installments, for her use and benefit and for the use and benefit of such child or children as may survive him. Such payments to cease upon the death or re-marriage of said widow, and in lieu thereof I direct that the sum of Twenty Thousand Dollars, shall be paid to such child or children of Aubrey Lanston as may survive him, in equal shares." On the death of Aubrey, the will of Tolbert Lanston gave the trustee "Five Thousand Dollars, or so much thereof as may be necessary to be expended for the education of Aubrey Gilpin Lanston, said sum to be expended in the discretion of the trustee"; and gave the residue of Tolbert's estate in trust to pay the income, and in the trustee's discretion half the principal, to the defendant Children's Hospital. The will provided that "In the management of the fund, its care, custody, investment and re-investment, the judgment of the trustee shall be absolute * * *."

The trustee received and has retained, as part of the trust fund under the will of Tolbert Lanston, certain shares of hotel stock and of Lanston Monotype stock. The annual income from the entire trust fund under this will is now about $4,500, of which the plaintiff Ethel V. Lanston is receiving her annuity of $1,000. The assets of the fund are sufficient to protect this annuity and the future payment of $20,000 to the children of Aubrey. The trustee has not set aside any part of the fund for ei-

ther or both of those purposes. The trustee has declined to expend anything for the "education" of the plaintiff Aubrey G. Lanston. He is well educated, is forty-two years old, and has a large income.

■ The plaintiffs ask a declaratory judgment that the plaintiffs Aubrey G. Lanston and Marjorie Lanston Fitzgerald have vested interests in the $20,000 which is to be paid, under the will of Tolbert Lanston, to the children of Aubrey Lanston on the death or remarriage of their mother. Their mother, the plaintiff Ethel V. Lanston, has not remarried. No one denies that Aubrey G. Lanston and Marjorie Lanston Fitzgerald have the vested interests which they assert. The trustee says that the question need not be determined at this time. We do not think this creates, as a matter of law, an "actual controversy" within the meaning of the declaratory judgment act. 28 U.S.C.A. § 400.

■ The plaintiffs ask that the trustee be required to set aside a sufficient part of the Tolbert Lanston trust fund to protect the payment of the $1,000 annuity and of the principal sum of $20,000. But the effect of the trustee's omission to set aside part of the fund is, at least so long as the omission continues, to subject the entire fund to these claims. Accordingly the omission may benefit the plaintiffs and can injure no one but the Children's Hospital. The Hospital does not complain and the plaintiffs have no standing to complain.

■ The plaintiffs would require the trustee to sell the hotel stock and the Monotype stock which it received under the will of Tolbert Lanston and to substitute less speculative securities. In the absence of a showing of negligence on the trustee's part, the broad discretion which the will gives to the trustee defeats this claim. Plaintiffs assert negligence, but the record does not support the assertion. The trustee was obviously justified in declining, in its discretion, to make payments for the "education" of Aubrey G. Lanston.

Affirmed.